CHARLES H. EICHELKRAUT AND SONS, INC., Indiv. and on behalf of Wausau Insurance Company, *et al.*, Plaintiffs-Appellants, v. BITUMINOUS CASUALTY CORPORATION, Defendant-Appellee.

First District (4th Division)   No. 86—1346

Opinion filed February 18, 1988.

Rooks, Pitts & Poust, of Chicago (Wayne F. Plaza and Michael C. Borders, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Mayer Goldberg, and Margaret J. Orbon, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Eichelkraut and Sons, Inc., Wausau Insurance Company, and Liberty Mutual Insurance Company (plaintiffs), filed suit against Bituminous Casualty Corp., alleging that Bituminous breached its duty to defend its insured, Eichelkraut, in a lawsuit brought by a school district in Ottawa, Illinois. The school district sued Eichelkraut as the general contractor for the construction of a junior high school, alleging faulty construction. Eichelkraut, Wausau, and Liberty Mutual defended and settled that lawsuit. They then filed a declaratory judgment action in the trial court seeking damages representing the attorney fees and expenses incurred in the defense of the suit.

The parties filed cross-motions for summary judgment. After a hearing, the court denied plaintiffs' motion and granted Bituminous' motion, finding that Bituminous had no duty to defend Eichelkraut because there was no coverage under the pertinent policy.

On appeal, plaintiffs contend that the trial court erred because their complaint alleged sufficient factual allegations of property damage during the period in which Bituminous' policy was in effect to establish a duty to defend, and, having wrongfully refused to defend initially, Bituminous is now estopped from denying coverage.

BACKGROUND

In September of 1968 the school directors of School District No. 141 engaged Eichelkraut to construct Shepard Junior High School in Ottawa, Illinois. The work was completed in September of 1969.

From the beginning of construction in 1968 to April 3, 1970, Liberty Mutual insured Eichelkraut. From April 3, 1970, through April 3, 1973, Wausau provided coverage. Bituminous provided comprehensive general liability insurance from April 1, 1973, through April 1 of 1978.

The school district filed a 19-count complaint against Eichelkraut, the architect, engineer, and additional contractors. Eichelkraut was served with summons in January 1978. Only four of the counts of the complaint were directed against Eichelkraut: these were breach of contract, breach of a guarantee contained in the contract, negligence, and breach of warranty.

The factual allegations set out various defects and inadequacies in the construction, installation, and selection of the roof of the school. As a result, it was alleged, the roof had leaked in approximately 120 places. Some leaks had begun upon the completion of the construction and continued to the present. The complaint further averred that the school district "has and will sustain damage to other parts of the building by reason of water leakage."

Eichelkraut tendered its defense to Liberty Mutual, Wausau, and Bituminous, the three companies which had provided coverage at various times from the beginning of construction to the filing of the suit. Liberty Mutual and Wausau jointly provided Eichelkraut a defense under their reservations of rights. Bituminous, however, denied coverage and declined to defend, citing certain provisions of its policy. After Eichelkraut tendered the defense to Bituminous a second time, Bituminous requested more information, which it did not receive. Bituminous then filed a declaratory action in La Salle County, which was dismissed on Eichelkraut's motion.

In March 1983 the school district's lawsuit was compromised and settled. Eichelkraut, Liberty Mutual and Wausau then sued Bituminous in a declaratory action, seeking their attorney fees and expenses based on Bituminous' alleged wrongful failure to defend Eichelkraut.

OPINION

I

According to plaintiffs, it was Bituminous' duty to defend the school district's suit if the complaint alleged facts even *potentially* within policy coverage. If this threshold is met, they maintain, the insurer must (1) defend the suit under a reservation of rights or (2) seek a timely declaratory judgment that the policy affords no coverage. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.) Since Bituminous did neither, plaintiffs argue, it is now estopped from raising noncoverage in the pending action or to question the settlement agreed to by the plaintiffs.[1]

For plaintiffs to prevail on either of their two arguments, they must establish that there was in fact a duty to defend in this case. Absent that duty, there can be no estoppel.

■ The general propositions of law are not disputed. "Only where it is clearly apparent on the face of the complaint that the claim is beyond policy coverage can the insurer justifiably refuse to defend." (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 153, 466 N.E.2d 1091, 1093.) The complaint must be liberally construed in favor of the insured. 126 Ill. App. 3d 150, 455 N.E.2d 1099.

According to the above law, we must analyze the complaint in light of the applicable policy provisions to determine whether the claim is potentially covered thereunder. Bituminous relies primarily on two portions of its general liability policy: (1) that which provides coverage only for property damage caused by an "occurrence," as defined in the policy, and (2) that which *excludes* from coverage damage to the building itself—the insured's "work product"—as distinguished from damage to other property. If either provision applies, Bituminous has no duty to defend.

The general property damage coverage provision of the Bituminous policy provides: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as

---

[1]The record indicates that Bituminous did in fact file a declaratory action in La Salle County but that the plaintiffs successfully moved for its dismissal.

damages because of:
  (a) bodily injury or
  (b) property damage
to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage \*\*\*." (Emphasis added.)

  The policy defines "property damage" as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an occurrence during the policy period." "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*" (Emphasis added.)

  The second provision that Bituminous relies on to support its position that the duty to defend did not arise is the so-called work product exclusion in the policy, which provides:

  "This insurance does not apply
  \*\*\*

   (n) to property damage to the named insured's products arising out of such products or any part of such products;

   (o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof or out of materials, parts or equipment furnished in connection therewith."[2]

  Bituminous contends that the underlying claim is not covered under its general policy coverage because Eichelkraut was on notice that the roof leaked before the issuance of the policy and there can be no coverage for loss which is expected. The policy definition of occurrence is an "accident," which means unusual and unexpected by the person to whom it happens. (Black's Law Dictionary 30 (4th ed. 1968).) The definition in the policy expressly requires that the damage be neither expected nor intended from the standpoint of the insured.

---

[2]The complaint alleges damage only to the roof and "other parts of the building," as opposed to other property such as the building's contents. Bituminous contends that since the damage was to the building itself (the insured's work product), the exclusion applies. We do not address this issue further because we believe that under the claim as alleged the insured is not covered under the general coverage language; accordingly, it is not necessary to determine whether or not the work product exclusion furnishes a separate base for denying coverage.

Bituminous therefore maintains that Eichelkraut could not insure against the alleged damage, which had already begun when Bituminous issued its policy.

The pertinent allegations of the complaint indicate that leaking from the roof "began at the time of completion of construction" in 1969 and continued to the filing of the lawsuit. The roof progressively deteriorated. Other allegations make clear that the problems with the workmanship and materials existed from the beginning; that the construction was faulty at the outset. Count II, alleging breach of guaranty, states that Eichelkraut was notified of the defects in the work and materials that resulted in the leaking, but that Eichelkraut failed and refused to rectify the situation as required by the guaranty.[3]

In essence, Bituminous seeks to avoid liability to plaintiffs by asserting that the above allegations establish that Eichelkraut knew or should have known about the defects in its construction by the time Bituminous issued its general liability policy in 1973, four years after the completion of construction. Therefore, the risks insured against could not have included any damage caused by the leaking roof. Moreover, the "occurrence" causing the damage was the faulty workmanship itself, as distinguished from an "accident" that occurred following construction and resulted in damage during the policy period, which would have been covered.

■ We agree with Bituminous that a fair reading of the complaint leads to the reasonable conclusion that the claim against Eichelkraut was not potentially within the general property damage coverage. Hence, there was no duty to defend and no further liability to plaintiffs in the pending case.

The circumstances of the pending case are similar to those in *United States Fidelity & Guaranty Co. v. Bonitz Insulation Co.* (Ala. 1982), 424 So. 2d 569. Bonitz was a contractor who built a gymnasium roof in the fall of 1972. By late fall, the roof began to leak and Bonitz was thereafter informed of the problem. Despite attempted repairs, the roof continued to deteriorate and ultimately had to be replaced. As in the present case, there was a change in insurers. The court held that the insurer who challenged its liability under language similar to that of Bituminous' did not have a duty to defend the insured. The court noted that the "occurrence" did not take place during the policy coverage of the second insurer and that the roof had

---

[3]Under this count, Eichelkraut and Travelers Indemnity Company were jointly and severally sued pursuant to the performance bond that Travelers issued on behalf of Eichelkraut.

been leaking for over four years before that insurer issued its policy. As such, the damage that resulted to the roof was not unusual or unexpected and not an "accident." See also *Bay State Insurance Co. v. Wilson* (1983), 96 Ill. 2d 487, 494, 451 N.E.2d 880 (injuries are "expected" if reasonably anticipated); *Town of Tieton v. General Insurance Co. of America* (1963), 61 Wash. 2d 716, 380 P.2d 127 (there can be no "accident" where there is a substantial probability of damage); *Bartholomew v. Appalachian Insurance Co.* (1st Cir. 1981), 655 F.2d 27, 29 (defective car wash unit caused damage that was evident from the outset and thus successive damage was not caused by an occurrence but a "re-occurrence," for which the insurer could not be held liable).

We are aware of the established authority that an insurer faced with a complaint against its insured must undertake the defense with a reservation of rights or file a declaratory action if coverage is unclear. (*E.g., Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) However, we do not find that the cases go so far as to require the insurer in every situation to file a declaratory action or to defend the underlying suit against its insured when a reasonable reading of the complaint reveals no coverage, even potential, under the policy in issue. We believe that Bituminous correctly determined that it had no duty to defend under the facts as alleged.

This is an appeal from cross-motions for summary judgment. As such, the material facts are not in dispute. That Eichelkraut knew or was on notice of the defects in the construction before 1973 is not denied; in fact there is an express admission of that fact in one of plaintiffs' answers to interrogatories. However, plaintiffs object to our consideration of any matters outside the complaint (despite the fact that this is a summary judgment) on the basis that the duty to defend must be gleaned strictly from the face of the complaint. See *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

We have noted in a somewhat different context, however, that there is "no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding. To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." *Fidelity & Casualty Co. v. Environdyne Engineers, Inc.* (1983), 122 Ill.

App. 3d 301, 305, 461 N.E.2d 471, 474.

■ In this case, both sides took discovery and both presented depositions and other material to the trial court for consideration on their respective motions for summary judgment. Accordingly, we find that plaintiffs have waived their objection to the consideration of matters outside the complaint.

We find, however, even limiting our consideration to the face of the complaint, that the factual allegations were sufficient to lead Bituminous to conclude that it owed no duty to defend Eichelkraut. In the alternative, we find it appropriate that the trial court considered the materials submitted on the cross-motions for summary judgment since the material facts were not in dispute and since the discovery material shed light on the knowledge of the parties and their intent at the time that the defense of the underlying lawsuit was tendered.

■ Notwithstanding our holding in this case, we note that in general the question of whether a claim against an insured is potentially covered is so close in so many cases that the benefit of the doubt goes to the insured. In those cases, the application of estoppel is justified, if the insurer fails to defend under a reservation or file a declaratory action. In the pending case, however, we find that the complaint revealed no duty to defend on the part of Bituminous. Hence, there is no basis to apply an estoppel.[4]

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.

---

[4]The record indicates that Bituminous did in fact file a declaratory action in La Salle County but that the plaintiffs successfully moved for its dismissal.