INTERNATIONAL INSURANCE COMPANY, Plaintiff,

v.

PEABODY INTERNATIONAL CORPORATION, Defendant.

PEABODY INTERNATIONAL CORPO-RATION, Counterplaintiff and Third–Party Plaintiff,

v.

INTERNATIONAL INSURANCE COM-PANY, Underwriters of London, Lloyds, and Walbrook Insurance Co., Counterdefendant and Third–Party Defendants.

No. 87 C 0464.

United States District Court, N.D. Illinois, E.D.

Sept. 26, 1990.

Edward F. Ruberry, Darcy L. Ibach, and Jeffrey A. Goldwater, Bollinger & Ruberry, Chicago, Ill., for plaintiff.

Chester J. Maciorowski, Stephen Carlsen, John Heller, David Johson, Sidley & Austin, and Barry L. Kroll, Cory S. Halpern, and Anthony J. Kiselis, Williams & Montgomery, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

One of the basic issues between the insurers, International Insurance Company, (International), Underwriters of London (Underwriters), Lloyds and Walbrook Insurance Company (Walbrook), on the one hand, and Peabody International Corporation (Peabody), the insured, on the other hand, is the question of whether or not the claim of Santee Cooper against Peabody, as presented in the arbitration proceeding, was covered by the insurers' policies of 1/25/85 to 1/25/86. In a motion for summary judgment regarding coverage, International for itself and its fellow insurers proposes the absence of coverage because (1) the claim was not first made during the policy period and (2) the insured had knowledge prior to the inception of the policy of facts or circumstances likely to give rise to the claim. In a separate motion for partial summary judgment regarding coverage, the other insurers, Underwriters, Lloyds and Walbrook propose an additional reason for non-coverage: that (3) the substance of the Santee Cooper claim(s) is not covered by the policies because the nature of the claim is not within the scope of coverage and is excluded from coverage by certain exclusions. This court has jurisdiction to hear this action because diversity of citizenship exists between the parties. 28 U.S.C. sec. 1332.

A motion for summary judgment should be granted:

[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FRCP 56(c). International, as the movant, bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, in ruling on this motion, the court will draw all reasonable inferences from the facts in the light most favorable to Peabody. *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984). Since the motions for summary judgment can be decided on either of International's two proposed defects, the court does not need to address whether the other insurers' third proposed reason to deny coverage applies. Thus, the insurers' motions for summary judgment are granted in part.

On January 7, 1985 Peabody submitted an application for Architects, Engineers and Construction Managers Professional Liability Insurance to International. On the basis of that application, International issued Policy No. 524–54–385–9 in favor of Peabody.

The policy explicitly provides coverage only for claims first made against the insured during the policy period and limits coverage to claims which do not arise out of an act, error or omission of which the insured had knowledge on the effective date of the policy. Section I of the Insuring Agreement clearly outlines the parameters of the coverage provided by the policy.

I. COVERAGE

The company will pay on behalf of the Insured all sums ... which the Insured shall become legally obligated to pay as damages by reason of any act[,] error or omission committed ... by the Insured ... provided always that:

(a) Claim is first made against the Insured during the policy period by reason of such act, error or omission;

(b) The Insured's legal liability arised [sic] out of the performance of professional services as an architect, engineer or construction manager; and

(c) The Insured has no knowledge of such act, error or omission on the effective date of this policy.

■ A contract must be interpreted as a whole. *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331 (7th Cir.1988). Thus, courts must place the meaning of words within the context of a contract as a whole. *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.*, 194 Ill. App.3d 744, 551 N.E.2d 340, 141 Ill.Dec. 347 (1 Dist.1990). Therefore, when language of a contract is unequivocal, it must be carried out according to its language. *Ricci v. Reed*, 169 Ill.App.3d 1062, 523 N.E.2d 1218, 120 Ill.Dec. 307 (1 Dist.1988). Consequently, the signatory to a contract is bound by its ordinary meaning. *Robbins v. Lynch*, 836 F.2d 330 (7th Cir.1988).

The first basis on which the motions for summary judgment may be resolved hinges on whether the Santee Cooper claim comes within the coverage provided by the policy. Only facts relevant to this issue are material for purposes of this basis for resolving the insurers' motions for summary judgment.

■ The applicable provision of the policy provides that the insurer will pay only if:

(a) *Claim* is first made against the Insured during the policy period by reason of such act, error or omission;

(Emphasis added). The term "claim" is defined in International's policy at definition 5 as:

The term "claim," whenever used in this policy, means a demand received by the insured for money or services, including service of suit or institution of arbitration against the insured.

Since the term "claim" is defined in the policy, it is unnecessary to make an excursion through cases and generalized legal rules in an effort to define "claim." The insurance policy is a contract that must be interpreted as a whole. Since the term "claim" is unequivocal, it will be carried out according to its definition. This definition does not require a formal lawsuit or the institution of arbitration proceedings as a prerequisite to the existence of a claim as

Peabody contends. A claim is any demand made for money or services, whether or not a lawsuit or arbitration proceedings are begun.

■ The claim with respect to the facts underlying the Santee Cooper action was first made against Peabody prior to the January 28, 1985, effective date of the policy. What is relevant here is that Peabody received notification of a claim or claims against it by Santee Cooper for deficiencies in the FGD system designed by Peabody no later than November 30, 1984. Santee Cooper sent a letter to International "reaffirming its insistence that Peabody take immediate steps to remedy contractual shortcomings without the use of additives." This letter was a demand for services as a right, which clearly falls within the definition of "claim" in the policy. *See e.g., Phoenix Ins. Co. v. Sukut Construction Co.*, 136 Cal.App.3d 673, 186 Cal.Rptr. 513, 515 (2 Dist.1982) (oral demand that lawyer work for free to cure problems constitutes a claim); *Katz Drug Co. v. Commercial Standard Ins. Co.*, 647 S.W.2d 831 (Mo. App.1983) (demand that employer restore employee's insurance coverage constitutes claim). Thus, a claim was made by Santee Cooper against Peabody by November 30, 1984.

■ Additionally, Peabody's actual or constructive knowledge regarding the potentiality for the Santee Cooper claim is not relevant to when the claim was first made as Peabody asserts. Peabody's response to the demands by Santee Cooper in November, 1984, is that Peabody reasonably believed that Santee Cooper was only "posturing for settlement." Whether or not Peabody believed, reasonably or otherwise, that the claim was "nothing more than a negotiating ploy," is not relevant to the issue of when a claim was first made because the insurance policy defined the term "claim" without reference to the belief of Peabody as to whether a claim was made. *See Evanston Ins. Co. v. Security Assur. Co.*, 715 F.Supp. 1405, 1414 (N.D.Ill.1989) (where insurance policy failed to define policy terms, the court would still not hold

that plaintiff's reasonable expectations as to the claim of coverage would be recognized.)

■ Additionally, whether or not the chloride problems or the engineering data base caused the failure of the FGD System is similarly irrelevant to the issue of when the claim was first made. The cause of the problem is immaterial since the claim was made when Peabody received Santee Cooper's demand for services by reason of Peabody's act, error or omission, regardless of the nature of that act, error or omission. Consequently, the only important fact is when the claim was made. Thus, the court finds that a claim as defined by the policy was first made prior to the effective date of the policy, January 25, 1985. This is the same claim which was later asserted in the arbitration proceedings and ultimately settled. Therefore, this court holds that the insurers have no obligation under the policy to cover Santee Cooper's claim against Peabody because that claim was not first made during the policy period.

Moreover, two alternative bases exist on which the instant motions for summary judgment may be decided. These alternative bases involve two related questions: (1) whether Peabody had knowledge of the act, error or omission which excludes it from coverage under the language of the policy and (2) whether Peabody made a material misrepresentation by failing to disclose on the application any facts which it had knowledge or could have reasonably foreseen any circumstances indicating the probability of a covered claim. Only facts relevant to these issues are material for purposes of these bases for deciding the insurers' motions for summary judgment.

■ First, with respect to the policy coverage, the policy stated in relevant part that the insurer would pay only if:

(c) The Insured has no knowledge of such act, error or omission on the effective date of this policy.

As previously stated, courts must place the meaning of words within the context of a contract as a whole. Therefore, when language of a contract is unequivocal, as in the instant case, it must be carried out according to its language. Consequently, if Peabody had knowledge of any act, error or omission on the effective date of the policy regarding a possible claim, the insurers have no obligation under the policy to cover Santee Cooper's claim against Peabody.

■ From an objective standpoint, there can be no doubt that on the effective date of the policy, Peabody knew of the acts, errors or omissions that ultimately erupted as the Santee Cooper claim. Prior to the submission of the application, Peabody received six relevant pieces of information that squarely put Peabody on notice or reasonably should have put Peabody on notice prior to the effective date of the relevant acts, errors or omissions:

1. 2/11/82 Internal Liggett memo analyzing Peabody's legal obligations should it fail to meet the performance guarantees at the three pending FGD plants.

2. 3/2/82 Internal Liggett memo which assumes failure of Santee Cooper FGD to achieve performance guarantees and analyzed legal obligations for such failure.

3. 3/25/82 Internal Ostroff memo which concludes that of the five FGD sizing equations reviewed the Alabama equation selected for sizing the Santee Cooper system sharply over predicted $SO_2$ efficiency removal.

4. 4/8/82 Internal Blake memo which concludes that even in the absence of chlorides, the Santee Cooper FGD system will not achieve $SO_2$ performance guarantees.

5. 11/15/84 letter from Santee Cooper to Peabody rejecting use of chemical additives to achieve contract performance guarantees.

6. 11/30/84 letter from Santee Cooper to Peabody demanding services to remedy contractual shortcomings without the use of chemical additives.

The above six facts are not in dispute, Peabody's claims to the contrary notwith-

standing. The memos and letters were written and received accordingly.

Peabody responds that of the six listed facts, the first three relate to the irrelevant chloride issue, the fourth involves an opinion of a Peabody engineer that was rejected by Peabody management, and the last two relate to correspondence from Santee Cooper that was understood by Peabody to be nothing more than a "negotiating ploy."

The subjective intent of Peabody that the letters were nothing more than a negotiating ploy is not at issue. The policy calls for no judgmental or subjective evaluation. Rather it required in traditional objective language that the insured have no knowledge of such act, error or omission on the effective date of the policy indicating the probability of a covered claim. Consequently, what Peabody understood about the letters is not relevant.

The court finds that under the undisputed facts of this case, Peabody had knowledge before the policy period of facts that fell within the scope of the language of the policy and that were later at the core of the Santee Cooper claim. Peabody's knowledge of such act, error or omission on its part prior to the effective date of the policy excludes it from coverage.

Second, with respect to whether Peabody misrepresented on the application, the application specifically requested information from Peabody concerning any circumstances, occurrence or condition of which Peabody was aware that may result in a claim. Inquiry 13(c) of the application states:

Is the Applicant aware of any circumstances, occurrence or condition resulting in accident or injury to person or persons, damage to property including loss of use thereof, unresolved job controversy or complaint regardless of amount, or allegation of discrimination which may result in the making or assertion of a claim against him, his predecessors in business, or any of the present or past partners or officers.

In response to this inquiry, Peabody indicated that it was aware of no such circumstances, occurrence or condition relative to the Santee Cooper project.

International contends application paragraph 13(c) contains misrepresentations in light of the six previously noted pieces of information known to Peabody when it signed the application. Peabody's principal retort is that the paragraph called for a subjective evaluation on its part, thus posing factual issues incapable of resolution on a Rule 56 motion.

The District Court for the Northern District of Illinois has already rejected this argument in *Evanston Ins. Co. v. Security Assur. Co.*, 715 F.Supp. 1405, 1414 (N.D.Ill. 1989), in which it granted summary judgment in favor of the insured. The *Evanston* case and the present case involve insurance applications that are strikingly similar. The relevant portions of *Evanston's* application provided coverage in the event:

12. No person(s) or entity(ies) proposed for this insurance is(are) cognizant of any act, error or omission which he(they) has(have) reason to suppose might afford valid grounds for any future claim(s) such as would fall within the scope of the proposed insurance, except as follows: (If answer is none, so state). **ANSWER:** none

14. No fact, circumstance or situation indicating the probability of a claim or action against which indemnification is or would be afforded by the proposed insurance is now known by any person(s) or entity(ies) proposed for this insurance other than that which is disclosed in this application. It is agreed by all concerned that if there be knowledge of any such fact, circumstance or situation, any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance. **ANSWER:** none

*Id.* at 1409. The *Evanston* court noted that application paragraph 14 calls for no judgmental or subjective evaluation but, through traditional objective language, it requires the disclosure of any facts indicating the probability of a covered claim. As for application paragraph 12, its "reason to suppose" language plainly establishes a

reasonableness standard as in a reasonable person. *Id.* at 1414. The *Evanston* court further noted that "on that score, the Illinois law of claims-made errors and omissions insurance is crystal-clear." *Id.* citing *Stiefel v. Illinois Union Ins. Co.*, 116 Ill. App.3d 352, 356, 452 N.E.2d 73, 75–76, 72 Ill.Dec. 141, 143–44 (1st Dist.1983). The court noted:

> [T]he policy excludes all acts prior to the policy period unless [the] claim is first made during the Policy period and providing no insured *had knowledge nor could have reasonably foreseen any circumstances which might result in a claim at the effective date of the Policy* ... Thus, the policy clearly and unambiguously provides that a claim must actually be made during the policy period. Additionally, the insured must not have knowledge of circumstances occurring prior to the policy period from which a claim might *reasonably have been foreseen.* Therefore, the fundamental issue before this court is whether the letter of December 22, 1976, constitutes sufficient notice to plaintiff from which it could have reasonably been foreseen that a claim would be made against plaintiff.

*Id.* (emphasis added). The *Evanston* court further quoted the *Stiefel* court's holding that "[a] court may determine an issue of reasonableness as a matter of law if the facts are not in dispute." *Id.* The court concluded that the defendant clearly had knowledge before the policy period of facts that fell within the scope of the application paragraphs 12 and 14 that were later at the core of the claim. Since there was no genuine issue of material fact, plaintiff was awarded summary judgment.

More recently, the Illinois Appellate Court had an opportunity to review the *Evanston* decision in *Ratcliffe v. International Surplus Lines Ins.*, 194 Ill.App.3d 18, 550 N.E.2d 1052, 141 Ill.Dec. 6 (1st Dist.1990). The court noted that "it is unnecessary for the insurer to prove that a misrepresentation was made with the intent to deceive if it was material to the risk assumed." *Id.* 550 N.E.2d at 1057, 141 Ill.Dec. at 11 citing *National Blvd. Bank v. Georgetown Life Ins. Co.*, 129 Ill.App.3d

73, 472 N.E.2d 80, 84 Ill.Dec. 330 (1st Dist. 1984). The court further noted that the *Evanston* court correctly found that when an applicant is asked to consider:

> an errors and omission policy application question asking whether the applicant knows of 'any fact, circumstance or situation indicating the probability of a claim against which indemnification is or would be afforded by the proposed insurance'. The court concluded that the question 'calls for no judgmental or subjective evaluation, but in *traditional objective language requires the disclosure of any facts indicating the probability of a covered claim.'*

*Id.* quoting *Evanston*, 715 F.Supp. at 1414 (emphasis added). The *Ratcliffe* court stated: "we agree with this result and conclude that the question in the policy application in this case likewise required the disclosure of any facts which, objectively considered, might have given rise to a claim regardless of the applicant's subjective belief." *Ratcliffe*, 550 N.E.2d at 1057, 141 Ill.Dec. at 11. The court further noted that "this objective standard is consistent with the standard applicable to questions of materiality, and with the principle that a material misrepresentation will avoid the contract even though made through mistake or good faith." *Id.*

From an objective standpoint, there can be no doubt that when Peabody applied for insurance it knew of facts presaging what ultimately erupted as the Santee Cooper claim. Prior to the submission of the application, Peabody received the above mentioned six relevant pieces of information that squarely put Peabody on notice or reasonably should have put Peabody on notice of the possibility of a claim by Santee Cooper.

As the court has previously noted, the subjective intent of Peabody that the letters were nothing more than a negotiating ploy is not at issue. The application calls for no judgmental or subjective evaluation. Rather it requires in traditional objective language the disclosure of any facts indicating the probability of a covered claim.

Consequently, what Peabody understood about the letters is not relevant.

The court finds that under the undisputed facts of this case, Peabody had knowledge before the policy period of facts that fell within the scope of application paragraph 13(c) and that were later at the core of the Santee Cooper claim. Peabody's failure to disclose these facts, circumstances or conditions on its application disqualifies it from coverage.

■ Additionally, public policy forbids one from obtaining insurance for a loss the insured knows is already present. Insurers undertake to indemnify insureds against unknown risks of harm. They do not undertake to indemnify against losses within the insured's control and of which the insured is aware. *National Union Fire Ins. Co. of Pittsburgh v. Continental Ill. Corp.*, 673 F.Supp. 300, 304 (N.D.Ill. 1987); *Eichelkraut v. Bituminous Casualty Corp.*, 166 Ill.App.3d 550, 519 N.E.2d 1180, 117 Ill.Dec. 13 (1st Dist.1988).

In sum, there is no genuine issue of material fact and International, Underwriters, Lloyds and Walbrook Insurance Companies are entitled to partial summary judgment as a matter of law. This court declares that the insurers have no obligation under the policy to cover Santee Cooper's claim against Peabody because (1) the claim was not first made during the policy period as required by the policy, (2) the insured had knowledge prior to the inception of the policy of facts or circumstances likely to give rise to the claim contrary to the requirement of the policy, and (3) Peabody misrepresented material facts on its application for insurance. The coverage issue is not the only controversy between the parties. This ruling does not dispose of the waiver and estoppel claims that have been made, which remain to be decided.

ORDERED: International, Underwriters of London, Lloyds and Walbrook Insurance Companies' motions for summary judgment are granted in part.