AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. MICHAEL SAVICKAS *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—96—4428, 1—97—0026 cons.

Opinion filed October 20, 1998.—Rehearing denied April 27, 1999.

RAKOWSKI, J., dissenting.

William E. Reynolds and Timothy Quinn, and Law Office of Jerry A. Latherow (Charles A. Porretta, of counsel), all of Chicago, for appellants.

Kiesler & Berman, of Chicago (Robert L. Kiesler, John J. Piegore, and Shannon F. O'Shea, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

American Family Mutual Insurance Company sued for a judgment declaring that it had no duty to defend or indemnify its insured, Michael Savickas, in a lawsuit Elizabeth Vinicky brought against him. The trial court granted summary judgment for American Family. Savickas appeals in docket number 1—97—0026 and Vinicky appeals in docket number 1—96—4428. We consolidated the appeals.

After a jury found Savickas guilty of the murder of Thomas Vinicky, Elizabeth Vinicky, administrator of Thomas' estate, sued Savickas for wrongfully causing the death. Savickas tendered defense to American Family. Due to a conflict of interests, American Family refused to defend, but it agreed to reimburse Savickas for defense costs. American Family then brought this suit for a declaratory judgment. Its policy excluded coverage for any bodily injury "which is expected or intended" by the insured.

American Family supported its motion for summary judgment with Vinicky's complaint against Savickas and excerpts from Savickas' testimony in the criminal trial. In the first two counts of her complaint, Vinicky alleged that Savickas intentionally shot and killed Thomas Vinicky. But in the last two counts she alleged that Savickas "[n]egligently shot" Thomas, and Savickas "[n]egligently assessed a need for self defense." In granting summary judgment, the trial court relied primarily on Savickas' testimony and the appellate court's decision affirming the criminal conviction. See *People v. Savickas*, 230 Ill. App. 3d 322, 594 N.E.2d 1233 (1992).

Our supreme court restated the principles for determining an insurer's duty to defend in *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24 (1976), and *Thornton v. Paul*, 74 Ill. 2d 132, 384 N.E.2d 335 (1978). In *Peppers*, Mims sued Peppers, alleging that Peppers shot him intentionally or negligently. Peppers' insurer sued for a judgment declaring that it had no duty to defend or indemnify Peppers. In support the insurer presented undisputed evidence that Pep-

pers intentionally shot at Mims to protect his property from burglary. The trial court found a duty to defend based on the allegations of the complaint, but no duty to indemnify. Our supreme court agreed that the insurer had a duty to defend (*Peppers*, 64 Ill. 2d at 194), and vacated the judgment regarding indemnity because:

"[T]he finding in the declaratory judgment action that the injury was intentionally inflicted could possibly establish the allegations of the assault count in the complaint and might preclude Mims' right to recover under the other theories alleged. [Citations.] In a case quite similar to ours the appellate court held that the ruling and judgment of the trial court in a declaratory judgment action under such circumstances were 'premature' and should be reversed. [Citation.] We agree with that holding. The finding of the trial court in our case that the injury was intentional was not proper in this declaratory judgment action." *Peppers*, 64 Ill. 2d at 197.

■ In *Thornton*, after a court found Paul guilty of criminal battery on Thornton, Thornton filed a civil suit alleging that Paul negligently struck him in the head. Paul's insurer expressly excluded battery from coverage. The court held:

"As a general rule, the duty of an insurer to defend an action brought against the insured is to be determined solely from the allegations of the complaint. If the complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend even if the allegations are groundless, false, or fraudulent. [Citations.] In addition, in Illinois the duty is not annulled by the knowledge of the insurer that the allegations are untrue.

\* \* \*

\*\*\* With the exception of the amended complaint, all the facts, depositions and pleadings in the present case clearly indicate that the claim was based on an intentional battery by Ben Paul, not on negligence. It is equally clear that the plaintiff's attorney was well aware that the defendant's act was a battery and that he filed the amended complaint charging negligence solely for the purpose of bringing the action within potential insurance coverage, thereby intending to obligate the insurer to defend after the insurance company had investigated, learned that the conduct was a battery, and refused. There is no explanation for the procedures followed other than the desire of plaintiff's counsel to maneuver the insurer into a position where it would be obligated to pay the judgment and estopped from raising the defense of noncoverage." *Thornton*, 74 Ill. 2d at 144-46.

■ Based on the unsupported allegation of negligence in the amended complaint, and in the face of the uncontested evidence of intentional battery, the court held that the insurer "was obligated to

provide a defense of the amended complaint to the insureds and that this obligation must be satisfied by reimbursing the insureds for the costs thereof." *Thornton*, 74 Ill. 2d at 162. The court explained that, due to their conflicting interests, "the insurer should not be *** permitted to participate in the defense of the case. Its obligation to provide a defense should be satisfied by reimbursing the insured for the costs of the defense." *Thornton*, 74 Ill. 2d at 152. In the suit to determine the duty to indemnify, to begin after conclusion of the underlying civil suit, the criminal conviction would constitute *prima facie* evidence that Paul committed a battery.

Here, as in *Thornton*, the court had reason to believe that Vinicky alleged negligence solely to bring her suit within the ambit of Savickas' insurance coverage. Here, too, the defendant had a criminal conviction and all depositions and other testimony showed he expected injury to result from his intentional acts. Under *Thornton*, these facts cannot relieve the insurer of the duty to defend. As the court said in *Management Support Associates v. Union Indemnity Insurance Co.*, 129 Ill. App. 3d 1089, 1096, 473 N.E.2d 405 (1984), "the insurer can safely and justifiably refuse to defend only when the allegations clearly show on their face that the claim is beyond policy coverage." The allegation of negligence in Vinicky's complaint, like the allegation in *Thornton*, triggered the duty to defend, and the complaint on its face does not here allege conflicting facts sufficient to relieve the insurer of that duty. Under *Peppers*, the court should not yet decide the duty to indemnify.

The trial court relied on *Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 551 N.E.2d 382 (1990), in finding no duty to defend or indemnify. In that case the court said that *Peppers* and *Thornton* "recognize that in instances where *bona fide* controversies arise over the issue of negligence versus intentional conduct, declaratory judgment actions are generally inappropriate." *Carioto*, 194 Ill. App. 3d at 774. The court then found that all of the evidence, including depositions and a criminal conviction, showed that the insured acted intentionally, and only the complaint against the insured alleged negligence. Because the court found no *bona fide* controversy concerning intent, it affirmed the trial court's decision to grant Allstate a judgment declaring it had no duty to defend its insured.

Our supreme court did not limit the application of *Thornton* to cases involving *bona fide* controversies over issues needed to determine coverage. In *Thornton* itself the court recognized the parties had no *bona fide* dispute, and the plaintiff alleged negligence solely to bring the cause of action within the insurance coverage. The court stressed that all of the evidence, including depositions and the criminal convic-

tion, showed the insured acted intentionally; against that evidence, the underlying complaint alleged negligence. That allegation required the insurer to defend.

We cannot reconcile *Carioto* with *Thornton*. In *Carioto*, the court effectively sought to overrule *Thornton*, as the limitation to *bona fide* controversies would have required a result on the facts of *Thornton* contrary to the result our supreme court reached. Under *Thornton*, the issue of the pleader's good faith, like all other issues in the underlying suit, must be resolved in that suit and not in the ancillary declaratory judgment proceedings.

"[O]nce the supreme court has declared the law on any point, we may not refuse to follow it, no matter what our personal views might be, because the supreme court alone has the power to overrule or modify its decisions." *Clark Oil & Refining Corp. v. Johnson*, 154 Ill. App. 3d 773, 780, 506 N.E.2d 1362 (1987). The court exceeded its authority when it sought to modify, and effectively overrule, *Thornton*. Accordingly, we decline to follow *Carioto*.

In *Carioto*, this division emphasized the rare facts of that case. There, the insured judicially admitted, in the context of the personal injury suit, that he acted intentionally, and he specifically repeated the admission after an attorney expressly warned that the admission would negate his insurance coverage. Here, by contrast, we have no similar admissions in the context of the personal injury suit. If our supreme court should fashion a modification of *Thornton* to accommodate the result in *Carioto*, we still would need to reverse the trial court's decision here. Unless our supreme court overrules *Thornton*, American Family has the duty to pay for Savickas' defense of Vinicky's lawsuit.

American Family argues that our supreme court has already implicitly overruled *Thornton*, at least on the issue of the estoppel effect of a criminal conviction, in *Talarico v. Dunlap*, 177 Ill. 2d 185, 685 N.E.2d 325 (1997), and *In re Scott*, 98 Ill. 2d 9, 455 N.E.2d 81 (1983). In *Scott*, an attorney faced suspension from practice following a conviction for filing false tax returns. The attorney conceded that the conviction constituted conclusive evidence, and not merely *prima facie* evidence, of his guilt, for purposes of the disciplinary proceedings. *Scott*, 98 Ill. 2d at 13. Thus, our supreme court did not need to decide whether the conviction collaterally estopped the attorney from relitigating the issues that arose in the criminal case. Moreover, the court had given criminal convictions conclusive effect for disciplinary proceedings long before it decided *Thornton*. See *In re Teitelbaum*, 13 Ill. 2d 586, 588, 150 N.E.2d 873 (1958). *Scott* does not overrule *Thornton* any more than *Thornton* overruled *Teitelbaum*. Although criminal

convictions are conclusive evidence of guilt for attorney disciplinary proceedings, they constitute only *prima facie* evidence for personal injury suits like the one Thornton brought against Paul and the one Vinicky brought against Savickas.

In *Talarico*, the plaintiff sued his doctor for prescribing drugs that caused him to commit a crime. The doctor sought to use the criminal conviction of the plaintiff defensively, to collaterally estop the plaintiff from litigating any issue he could have raised in the criminal case concerning the effect of the drugs on his actions. The court recited minimal standards for the application of defensive collateral estoppel and found even those minimal requirements were not met. Therefore, the court held that the criminal conviction did not estop the plaintiff from litigating the effect of the drugs. *Talarico*, 177 Ill. 2d at 198.

Although the court allowed that criminal convictions might have conclusive effect in some civil actions, and the court discussed some minimal criteria for defensive estoppel, the court did not purport to establish any standards that would require application of collateral estoppel. The court did not mention *Thornton* or the conclusion it reached there that an insurer may not use a criminal conviction of its insured offensively to collaterally estop the insured from relitigating, in a subsequent civil action, issues that may have arisen in the criminal trial. As *Talarico* involved only defensive collateral estoppel, and the court has emphasized the need for greater care in applying offensive collateral estoppel (see *Van Milligan v. Board of Fire & Police Commissioners*, 158 Ill. 2d 85, 95, 630 N.E.2d 830 (1994)), we do not find that the decision in *Talarico* effectively overruled *Thornton*. If our supreme court chooses to overrule *Thornton*, it will need to do so more clearly.

American Family asserts that *Thornton* applies only to cases in which the declaratory judgment would determine an issue that will be crucial to determination of the underlying case. But here the trial court's declaratory judgment established that Savickas shot Thomas Vinicky, and when he did so he expected to injure him. These issues may affect proof of whether Savickas proximately caused the death. See *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 738, 666 N.E.2d 704 (1996).

The evidence apart from the complaint here shows no real dispute over the issue of proximate cause, but the evidence apart from the complaint in *Thornton* also showed no real dispute over Paul's intent. Such evidence does not alter the duty to defend. "A court may look beyond the allegations in the complaint only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy."

*Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 562, 571 N.E.2d 256 (1991). This case does not involve such issues unrelated to civil liability. See *Peppers*, 64 Ill. 2d at 193.

American Family, like the insurer in *Thornton*, seeks to avoid paying for the defense of a lawsuit where the evidence indicates that the plaintiff raised a negligence claim solely to bring the cause of action within the insurance coverage. American Family seeks dismissal of the negligence counts from Vinicky's suit against Savickas, or at least preclusion of litigation concerning Savickas' intentions or expectations. In effect American Family seeks rulings by which "the order and burden of proof would be oriented to and dictated by the declaratory judgment action and not by the primary litigation, the personal injury suit." *Thornton*, 74 Ill. 2d at 159. Our supreme court in *Thornton* precluded such reorientation of the proceedings in the personal injury suit to meet the insurer's needs. Where, in a lawsuit against an insured, the insurer's interests conflict with the interests of the insured, the insured must retain control over the lawsuit. *Peppers*, 64 Ill. 2d at 199.

Finally, American Family contends that the allegation that Savickas "[n]egligently shot" Thomas Vinicky is not sufficiently factual to support a duty to defend. American Family did not raise this argument in the trial court. At most, the argument presents grounds for a remand so that Vinicky can make more definite the factual allegations of her complaint. See *Conway v. Conners*, 101 Ill. App. 3d 121, 130, 427 N.E.2d 1015 (1981). This belated contention cannot support the trial court's decision here.

Moreover, American Family raises no objection to the allegation that Savickas "[n]egligently assessed a need for self defense." That allegation creates a duty to defend because the fact that Savickas negligently assessed the need for self defense does not entail a finding that he expected his acts to harm Thomas. In *West American Insurance Co. v. Vago*, 197 Ill. App. 3d 131, 137, 553 N.E.2d 1181 (1990), and *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 337-38, 622 N.E.2d 139 (1993), the court emphasized that the complaints alleged facts that proved the insurance coverage did not apply. Here, the complaint lacks such allegations. From the face of the complaint we can draw no conclusions about Savickas' expectations. Therefore, American Family has a duty to pay for Savickas' defense of the lawsuit. See *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d 883, 896-97, 318 N.E.2d 315 (1974).

We note that by objecting to the factual insufficiency of the allegations, American Family would require Vinicky to make her complaint against Savickas more specific. This, too, appears to be an effort to

control an aspect of Savickas' defense, for which American Family is paying, to minimize American Family's costs. If the court could find no duty to defend because the underlying complaint lacked sufficient factual specificity, the duty to defend would "hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action." *Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066 (1989). Illinois courts have held that the duty to defend should not depend on such chances. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 193 Ill. App. 3d 1087, 1092, 550 N.E.2d 1032 (1989), *aff'd* 144 Ill. 2d 64, 578 N.E.2d 926 (1991).

We see no meaningful distinction between this case and *Thornton*. Accordingly, we find that American Family has a duty to pay for defense of Savickas, and the trial court should consider the duty to indemnify only after resolution of the case Vinicky brought against Savickas. The judgment of the trial court is reversed and the cause is remanded for proceedings in accord with this opinion.

Reversed and remanded.

TULLY, J., concurs.

JUSTICE RAKOWSKI, dissenting:

Because the facts of this case show as a matter of law that Savickas expected bodily injury to occur, the trial court properly granted summary judgment in favor of American Family and against Savickas and the estate of Vinicky.

Savickas and several friends were drinking at the New Gold Coast Tavern. An argument ensued between Savickas and another member of the group. The bar owner, Robert Walensky, asked Savickas to leave and escorted him to the door. Savickas initially left, but came back and began to bang on the window of the tavern. Walensky then grabbed a baseball bat kept behind the bar and ran out the front door. He watched as Savickas walked away. The decedent, Thomas Vinicky, who occasionally cleaned and stocked the tavern for Walensky, got up from his barstool and said "I'm getting the hell out of here." Vinicky was not part of Savickas' group, nor did he attempt to assist Walensky in expelling Savickas from the bar. Only two people testified as to what happened next.

Walensky watched from the front door of the tavern and could see Savickas and Vinicky facing each other. Vinicky asked Savickas "What's the matter? Why are you doing all this?" Savickas then pulled a gun from his pocket and shot Vinicky in his chest as he was stepping backward.

Savickas testified that, after banging on the window a second time, he was walking away when he saw Vinicky. According to Savickas, Vinicky called him an obscenity, threatened him, and appeared to go for a gun. Savickas panicked, grabbed his gun, and shot Vinicky. The criminal trial transcript reflects the following:

"Q. Did [the gun] go off accidentally?
A. No, sir.
Q. You pulled the trigger, didn't you?
A. Yes, sir.
Q. And put a bullet through his heart, didn't it?
A. Yes, sir. ***
Q. You say you know the gun was loaded at the time, is that right?
A. Yes, sir.
Q. Did it work?
A. Yes, sir.
Q. When you pulled the trigger, after aiming the gun at Tom Vinicky, it went off, didn't it?
A. Yes, sir.

* * *

Q. Why did you fire the weapon at Mr. Vinicky?
A. I was afraid he was going to kill me.
Q. At that time, what did you do?
A. I panicked. I reached inside, grabbed my gun and shot at him.
Q. You wanted to shoot him to prevent him from killing you, isn't that right?
A. Sure.
Q. You were very afraid, so afraid you killed a man, is that correct?
A. I shot him in self-defense, yes."

After the shooting, Savickas ran from the scene. Walensky and other people from the tavern immediately ran to Vinicky. No gun was found in the area or on Vinicky's person. The jury found Savickas guilty of first degree murder. 720 ILCS 5/9—1(a)(1), (a)(2) (West 1996). Savickas's conviction was affirmed on appeal. *People v. Savickas*, 230 Ill. App. 3d 322 (1992). Subsequently, the trial court denied Savickas' postconviction petition, which was affirmed by this court. *People v. Savickas*, No. 1—94—2240 (1995) (unpublished order under Supreme Court Rule 23).

A wrongful death and survival action was filed on behalf of the estate of Vinicky naming Savickas as defendant. The amended wrongful death complaint contained four counts. Counts I and II, survival and wrongful death, alleged an intentional tort. Counts III and IV, wrongful death and survival, alleged that Savickas "negligently shot"

Vinicky and "negligently assessed a need for self-defense." American Family elected to defend the action under a reservation of rights and then filed the instant complaint for declaratory judgment praying for a declaration that it owes no duty to defend or indemnify Savickas in the underlying tort action. The policy at issue contains the following exclusion:

"Coverage D—Personal Liability and Coverage E—Medical Expense do not apply to bodily injury or property damage:

a. which is expected or intended by any insured[.]""

In finding in favor of American Family, the trial judge carefully noted the difference between what Savickas may have intended as compared to what he may have expected. She specifically stated that she could not decide the question of intent because that would impact the underlying tort action because it is a crucial issue to that action. She noted, however, that what was expected would not be an issue in the underlying tort case. She then went on to conclude that whether Savickas was acting in self-defense or not, he had to expect that there was going to be bodily injury as a consequence of his aiming and firing a loaded gun at Vinicky. For the reasons that follow, I respectfully submit that the trial court was correct.

Initially, I respectfully find the law as recited by the majority to be somewhat confusing. I will therefore state what I believe the law to be and then apply the law to the facts of this case.

At the initial stage of the proceedings—where only the underlying complaint is on file—an insurer's duty to defend is determined by the allegations of that underlying complaint. However, if an insurer opts to file a declaratory judgment action, it may properly challenge the existence of such duty and offer evidence to prove that the insured's conduct fell within the limitations of a policy exclusion. *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304 (1983). "To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 305; *Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.*, 166 Ill. App. 3d 550, 556 (1988). "Though the action is for declaratory judgment, a court need not wear blinders and be limited to the allegations of the complaint." *Travelers Insurance Cos. v. P.C. Quote, Inc.*, 211 Ill. App. 3d 719, 724 (1991).

The only time such evidence is not permitted is where it tends to determine an issue crucial to the determination of the underlying tort action. *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 304-05.

"Both *Peppers* and *Thornton* are instructive as to what matters cannot be determined in a declaratory judgment proceeding prior to the completion of the underlying action. *Peppers* states that an ultimate fact upon which recovery is predicated in the underlying case may not be addressed. The court's language suggests that an ultimate fact is one which would estop the plaintiff in the underlying case from pursuing one of his theories of recovery. *Thornton* implies that an ultimate fact is one which 'an issue crucial to the insured's liability' in the underlying case is determined. Apparently only then would the inequities surface in regard to alignment of the parties and the order and burden of proof, because those matters necessarily arise in any declaratory judgment proceeding brought before completion of the underlying lawsuit." *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 307.

However, if a crucial issue is not determined, there is simply no reason why the parties seeking a declaration of rights should not have the prerogative to present evidence that is generally accorded to a party to a motion for summary judgment in a declaratory proceeding. *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 305. See also *Murphy v. Urso*, 88 Ill. 2d 444, 455 (1981); *Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 742-43 (1999); *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336 (1993); *Millers Mutual Insurance Ass'n v. Ainsworth Seed Co.*; 194 Ill. App. 3d 888, 891 (1989); *Charles H. Eichelkraut & Sons, Inc.*, 166 Ill. App. 3d at 556; *Travelers Insurance Cos. v. Penda Corp.*, 974 F.2d 823, 828 (7th Cir. 1992).

In the instant case, the court found that Savickas "expected" bodily injury to occur. Unlike what Savickas "intended," what he "expected" is neither an ultimate fact nor a crucial issue in the underlying tort action.

In *Bay State Insurance Co. v. Wilson*, 96 Ill. 2d 487 (1983), our supreme court found that the term "expected" was not included in the insurance policy to serve as synonymous surplusage to the term "intended" but that it served a separate purpose. *Bay State Insurance Co.*, 96 Ill. 2d at 494. The court observed:

"The appellate court has previously interpreted exclusionary clauses identical to the one in the instant case. The terms 'intended' or 'expected' included in such clauses have not been treated as synonymous. Otherwise, no purpose would be served by including them within the clause. A greater degree of proof is required to establish intent than to establish expectation. [Citation.] Injuries which are of such a nature that they should have been reasonably anticipated by the insured are 'expected' injuries. [Citation.]" *Bay State Insurance Co.*, 96 Ill. 2d at 494.

It is clear from the above that an insurer may challenge its duty to defend in an action by declaratory judgment. In doing so, it may look beyond the four corners of the complaint and submit extrinsic evidence to prove that the insured's conduct fell within the policy exclusions. The only time such evidence may not be presented is where it bears upon an ultimate fact upon which recovery is predicated in the underlying case. Furthermore, our supreme court has concluded that when one aims and fires a loaded gun at another, self-defense notwithstanding, the shooter is consciously aware that injuries are likely to be caused by his conduct and, therefore, he reasonably anticipates or expects the resulting injuries. *Bay State Insurance Co.*, 96 Ill. 2d at 487. As such, the only remaining issue in the instant case is whether what Savickas expected is an ultimate fact upon which recovery is predicated in the underlying action. Although neither the parties nor my research has revealed any authority on this issue, I submit that it is not.

Initially, I note that the estate of Vinicky does not address this issue in its opening brief. Only in his reply brief does Savickas address the issue, stating:

> "Clearly then, when our trial court in the Declaratory Judgment action found 'conclusive proof' on the basis solely of extrinsic evidence that the injury was 'expected,' *** it resolved *at a minimum* the issue of proximate cause in the underlying tort suit, i.e., that Savickas 'reasonably anticipated' an injury would result from his alleged conduct."

The majority opinion disposes of this issue by simply stating that the issue "may affect proof of whether Savickas proximately caused the death." I respectfully submit that the contention is without merit.

To say that the estate of Vinicky's underlying tort complaint is succinct is an understatement. The factual allegations of the intentional tort count state only that Vinicky was shot and killed by Savickas; the negligence count states that Savickas negligently shot Vinicky and negligently assessed a need for self-defense. With respect to the negligence counts, the facts only support one theory—a negligent assessment of the need for self-defense. Importantly, the complaint does not allege that the gun went off accidently or that Vinicky was accidently shot.

For a successful cause of action in negligence, the plaintiff must establish a causal connection between the defendant's conduct and the injury. Although the Illinois Pattern Jury Instructions refer to the requisite causation as "proximate cause," causation is actually comprised of two components. 1 M. Polelle & B. Ottley, Illinois Tort Law § 14.23, at 14—27 to 14—28 (2d ed. 1998) (hereinafter Illinois

Tort Law); Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1995) (hereinafter IPI Civil 3d). First, the alleged tortious conduct must be the "cause in fact" of plaintiff's injury. Existence of cause in fact can be determined by asking whether defendant's conduct was a material element and a substantial factor in causing the injury. Illinois Tort Law § 14.24, at 14—29.0. In the underlying tort case, it is without question that Savickas' conduct of aiming and firing the gun directly at Vinicky was a material element and substantial factor in causing Savickas' fatal injuries.

The second component is what the pattern jury instructions term as "proximate cause." Also known as "legal cause," this component is not really a question of causation because there is no question that defendant's act or omission was the cause of the injury. Rather, it is a question of policy: "How far should the defendant's legal responsibility be extended for conduct that has in fact caused harm?" Illinois Tort Law § 14.24, at 14—29.0. According to the pattern jury instructions, a defendant will be liable for the consequences of his conduct if the injury complained of was the "natural or probable" consequence of that conduct. IPI Civil 3d No. 15.01. Similarly, our supreme court has explained that "a negligent act is a proximate cause of an injury if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 456 (1992); see *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 380 (1943) (to have proximate cause "[t]he injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act").

In this case, the exclusion provision of the insurance policy provides that coverage does not extend to bodily injury or property damage "which is expected or intended by any insured." The underlying complaint alleges intentional conduct and that Savickas shot Vinicky pursuant to a negligent assessment of a need for self-defense. In light of the definition of proximate cause and the facts pled in the underlying complaint, I submit that the proximate cause element exists as a matter of law. It is not a viable factual issue. Further, even if it could somehow be said that proximate cause could be at issue, the trial judge's decision that Savickas expected injury to occur does not in any way impact that issue.

If Savickas· intentionally shot Vinicky as contended in the intentional tort count, it is axiomatic that Savickas' conduct of intentionally aiming and firing a loaded gun at Vinicky is the

proximate cause of any injury to Vinicky. According to the negligence count, Savickas negligently believed that Vinicky had a gun or would otherwise harm him. He thus believed he had to defend himself. However, Savickas' negligent assessment of a need for self-defense alone did not result in any injury to Vinicky. Rather, the injury was caused by Savickas' conduct, the aiming and firing of the gun, which was done in furtherance of and based upon the negligent assessment. Again, proximate cause exists as a matter of law. When one aims and fires a loaded gun at a person, injury of that person is the natural and probable consequence. Whether Savickas was acting in self-defense does not in any way change the result. Thus, the element of proximate cause is not a question of fact. Rather, it exists as a matter of law. Thus, proximate cause is simply not an issue in the underlying tort action, much less a crucial issue.

Assuming *arguendo* that proximate cause could somehow be determined to be a factual issue in the underlying action, I fail to understand how it could be impacted by the trial court's decision that Savickas expected the injury to occur. What Savickas expected is not an ultimate fact or crucial issue in the tort action. The determination made by the trial court does not estop the plaintiff in the underlying case from pursuing any of his theories of recovery. See *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976). That Savickas expected injury to occur is consistent with plaintiff's underlying theory that Savickas negligently acted in self-defense. It is also consistent with Savickas' sworn testimony in the criminal case. Assertions by Savickas and the estate of Vinicky that legal cause could be impacted by the trial court's finding that Savickas expected injury are without merit. It is absurd to say that injury to Vinicky was an unforeseen consequence of Savickas' conduct. Only where it appears to the court that it was highly extraordinary that the actor's conduct could have brought about the harm, may the court conclude that such conduct is not a legal cause of plaintiff's injury. See Restatement (Second) of Torts, § 435(2) (1965). "[F]oreseeability is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it." *Nelson v. Commonwealth Edison*, 124 Ill. App. 3d 655, 663 (1984).

For all these reasons, I would affirm the judgment of the circuit court of Cook County.[1]

---

[1]Petition to exceed page limitation for dissents was allowed by the Supreme Court of Illinois on April 15, 1999 (No. MR 12788).