70 F.3d 1271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James and Brenda BITTEL, Plaintiffs-Appellants,
v.
YAMATO INTERNATIONAL CORPORATION, Defendant-Appellee.
 No. 94-1396.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1995.
 
 Before: BOGGS and BATCHELDER, Circuit Judges; and QUIST, District Judge.*
 BOGGS, Circuit Judge.
 
 
 1
 Plaintiffs James and Brenda Bittel appeal the district court's refusal either to reopen their bankruptcy case or to amend their asset schedules to include a lawsuit. Because we find that the district court abused its discretion in so ruling, we reverse and remand the case with instructions.
 
 
 2
 * On March 11, 1992, the Bittels filed for Chapter 7 protection, having accumulated a great deal of consumer debt. Ms. Bittel had been discharged from her job at Yamato International Corp. on February 5, 1992, an event that plaintiffs claim ultimately forced them into bankruptcy. The Bittels claim that they did not list a potential discharge claim against Yamato in their bankruptcy petition because Mrs. Bittel found the idea of litigation distasteful and because she believed that she would find another well-paying job in short order, which would minimize or eliminate her damages.
 
 
 3
 After an uneventful bankruptcy, the trustee filed a "No Assets Report," the debtors were granted a discharge on July 27, 1992, and the case was closed. Mrs. Bittel was unable to find new employment, and she subsequently "reevaluated her attitude toward Yamato." On April 1, 1993, the Bittels sued Yamato in state court, alleging wrongful discharge.
 
 
 4
 In response, Yamato moved for summary judgment on the grounds that the Bittels lacked standing because the cause of action was now the property of the estate and thus belonged to the bankruptcy trustee alone. The state court delayed ruling on the motion, preferring to allow the Bittels try to reopen the bankruptcy proceedings and to "obtain guidance or authorization from the Bankruptcy Court." Order of Nov. 18, 1993 at 2. The trustee researched whether it was worthwhile for the estate to reopen the Bittels' case and concluded that "the bankruptcy estate should not become a participant or sponsor as there is no real liklihood [sic ] of recovery for the general creditors." Supplement To Trustee Report of No Distribution, filed Oct. 15, 1993.
 
 
 5
 The Bittels then moved to reopen their bankruptcy case, seeking either a declaration that they could prosecute the lawsuit against Yamato in the trustee's stead or an order permitting them to amend their asset schedules. The court notified all of the Bittels' creditors, none of whom objected. Yamato opposed the motion, arguing that the bankruptcy court lacked legal authority to reopen the case, and that the intentional omission of the claim prejudiced Yamato and militated against permitting the Bittels to amend.
 
 
 6
 After a hearing on December 9, 1993, the bankruptcy court found "no factual or legal basis" for the motion and denied relief.[1] The state court granted Yamato summary judgment on December 17, but tolled the statute of limitations so that the Bittels can bring the action if the bankruptcy court is reversed. On March 11, 1994, the district court affirmed the bankruptcy court in a one-page opinion.
 
 II
 
 7
 As a preliminary matter, we must address Yamato's standing to intervene in the Bittel's bankruptcy proceeding. Although the Bittels raise this question in their brief before this court, they failed to argue that issue below. Regardless, because lack of standing is a jurisdictional bar, an appellate court may consider questions of standing sua sponte. Community First Bank v. Nat'l Credit Union Admin., 41 F.3d 1050, 1053 (6th Cir.1994) (appellee's failure to cross appeal did not waive standing issue; "[s]tanding is not an affirmative defense that must be raised at risk of forfeiture"); Newsome v. Batavia Local Sch. Dist., 842 F.2d 920, 922 (6th Cir.1988).
 
 
 8
 Yamato's interest in this matter is clearly sufficient to confer standing. "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 72 (1978), quoting Baker v. Carr, 369 U.S. 186, 204 (1962). Yamato would gain immunity from the Bittels' wrongful discharge claim if it prevails in blocking the Bittels' amendment or reopening of their bankruptcy proceeding; there can be no question of Yamato's sincerity or vigor in pursuing that goal, or that such an interest constitutes a sufficiently personal stake in the outcome of the Bittels' bankruptcy case.
 
 III
 
 9
 The decision of a bankruptcy court to reopen a case or allow a debtor to amend his schedules is reviewed for an abuse of discretion. In re Rosinski, 759 F.2d 539, 540 (6th Cir.1985).
 
 
 10
 In re Rosinski is the leading Sixth Circuit case on a debtor's ability to reopen a bankruptcy proceeding (pursuant to 11 U.S.C. Sec. 350(b)[2]). Our circuit adopted the Seventh Circuit's rule that a debtor "may be prevented from amending her schedule only if her failure to include the creditor on the original schedule can be shown to have prejudiced him in some way or to have been part of a scheme of fraud or intentional design." 759 F.2d at 541. The critical question is whether a debtor's failure "has deprived [a creditor] of remedies available under the Bankruptcy Code or whether there was evidence that the exclusion was fraudulent or intentional."[3] Ibid.
 
 
 11
 The doctrine was extended by In re Soult, 894 F.2d 815 (6th Cir.1990), to bar amendment when the omission was willful or reckless. In that case, several years had passed between the discharge and the motion to reopen. We justified this rule on the grounds that "only the creditors' rights to participate in a dividend and to obtain a determination of dischargability are of such importance that their loss mandates exception of a late scheduled debt from discharge."[4] Rosinski, 759 F.2d at 542 (citing In re Stark, 717 F.2d 322 (7th Cir.1983), and In re Zablocki, 36 B.R. 779, 783 (Bankr.D.Conn.1984)). Thus, the general rule is to allow amendment of bankruptcy schedules unless creditors are prejudiced.
 
 
 12
 Rosinski does not apply precisely to this case because it governs the addition of a debt to a bankruptcy estate rather than an asset. This distinction, however, only adds greater impetus for applying the rule of reopening here. If a party can reopen a bankruptcy proceeding to discharge a debt and thus deny a creditor the funds owed to her, surely the same should be allowed where there is no harm to any creditor and there is a possibility of recovery to the bankrupt's creditors.[5] This assists the debtor's financial rehabilitation, and the debtor cannot use Sec. 350 to hide the proceeds of the suit from creditors because any recovery can still be included in the estate upon the trustee's motion to reopen. The exceptions in Rosinski for fraud, recklessness, or prejudice to a creditor ensure that the rule will not be abused to weaken the finality of bankruptcy proceedings.
 
 
 13
 Allowing the Bittels to pursue a claim against Yamato comports with the plain mandate of the Bankruptcy Code, which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. Sec. 350(b) (emphasis added); see Soult, 894 F.2d at 817 ("Rosinski teaches that 'other cause' can be found when the failure to schedule a debt was simply inadvertent and did not prejudice the creditor in any way"). The Bittels urge us not to put too much weight on the trustee's opinion that a recovery for the general creditors is unlikely, noting that because they did not use all of their allowable exemptions, they would have to recover more than $7,000 before any money would go into the general pool of assets for creditors. Therefore, so long as the recovery is modest, a successful suit could benefit them as the debtors, even if it did not aid the creditors.
 
 
 14
 The court in In re Laporta, 26 B.R. 687 (Bankr.N.D.Ill.1982), allowed a debtor to reopen his case after discharge where he was owed money:
 
 
 15
 Bankruptcy Rule 515 provides that the re-opening of a case is a matter of court discretion but relief to the bankrupt is explicitly recognized as a proper cause for re-opening. Given that the Secretary of Labor is holding over $5,000 of funds originally owed to the debtor and has a possible claim against the debtor for as much as $16,827.13, a clear cause for reopening the debtor's bankruptcy case does exist....
 
 
 16
 Id. at 690. Courts have more commonly allowed debtors to reopen bankruptcy proceedings or amend schedules to include lawsuits where creditors are suing the estate to establish liability to recover from a debtor's insurance company. See Hawxhurst v. Pettibone Corp., 40 F.3d 175 (7th Cir.1994); In re Beeney, 142 B.R. 360 (Bankr. 9th Cir.1992); In re Shondel, 950 F.2d 1301 (7th Cir.1991).
 
 
 17
 The Fifth Circuit follows the same rule as Rosinski, and has suggested that in determining whether to reopen a bankruptcy case, courts should consider the circumstances of the debtor's failure to list a creditor, the degree of disruption that would result from the amendment, and whether the added creditor, as well as the general creditors, would be prejudiced. Robinson v. Mann, 339 F.2d 547, 550 (5th Cir.1964). It is not difficult to extend these guidelines to the failure to schedule an asset.
 
 
 18
 Although the Bittels' reasons for not listing the potential lawsuit as an asset are far from clear,[6] the estate would suffer disruption only in the event the Bittels recovered significant damages by the bringing of the suit, in which case the estate could redistribute the assets to the creditors. The only "prejudice" in this case would be Yamato's loss of a windfall, one that the bankruptcy laws did not anticipate. Because Yamato is neither a debtor, creditor, nor trustee, it is difficult to justify using the Bittels' Chapter 7 status to shield Yamato from liability. This difficulty is underscored by the fact that a recovery from Yamato would be certain to benefit the debtor and might also benefit the general creditors. Yamato's interpretation would not further any of the goals of the Bankruptcy Code, and would hinder the debtors' fresh start (particularly disturbing if Ms. Bittel's discharge from work truly precipitated their bankruptcy). Thus, we hold that the district court abused its discretion in denying the Bittels' motion without any specific findings, based only on its statement that there was "no factual or legal basis" for the motion.
 
 IV
 
 19
 Yamato claims that the Bittels are foreclosed from pursuing the wrongful discharge claim because the cause of action belongs to the estate. Since the bankruptcy trustee decided not to sue, the Bittels lack standing. The Bittels argue that they should be allowed to bring the claim because the trustee has essentially abandoned it.
 
 
 20
 Yamato is correct that the cause of action belongs to the estate and its trustee regardless of the parties' intentions. As a bankruptcy court noted in a case with some factual similarities to this one:
 
 
 21
 The debtors also propose that, since the cause of action against MSI was both inchoate and worthless at the time of the debtors' filing for bankruptcy, no asset existed and the debtors did not have to list the cause of action in the bankruptcy petition schedules.... Here, the breach occurred prior to the filing of the bankruptcy, indeed it may have precipitated the filing. Simultaneous with the breach, came a cause of action on the breach ... [which] created a legal interest in which the debtors were free to take advantage. Thus, the cause of action should have been listed on the debtors' schedules.
 
 
 22
 In re Winebrenner, 170 B.R. 878, 883 (Bankr.E.D.Va.1994). "[P]roperty of the estate that is not abandoned under [Sec. 554] and that is not administered in the case remains property of the estate." 11 U.S.C. Sec. 554(d).
 
 
 23
 Thus, the Bittels can bring their suit against Yamato only if the trustee has abandoned his interest in the cause of action. See Harris v. St. Louis Univ., 114 B.R. 647, 649 (Bankr.E.D.Mo.1990) (debtor lacked standing to sue former employer under Title VII and ADEA); Davis v. AVCO Finance, 158 B.R. 1000 (Bankr.N.D.Ind.1993) (filing of complaint where debtors lacked standing and failure to substitute trustee as real party in interest warranted Rule 11 sanctions).
 
 
 24
 Abandonment of an asset is governed by Sec. 554 of the Code, and may occur in either of two ways. Section 554(c) automatically abandons any asset listed on the appropriate schedules that is "not otherwise administered." Because this section requires listing the asset, even if the trustee is aware of the asset through other channels, Stanley v. Sherwin-Williams Co., 156 B.R. 25, 26 (Bankr.W.D.Va.1993), Sec. 554(c) is irrelevant in this case.
 
 
 25
 Sections 554(a) & (b) both require "notice and a hearing" before the trustee may abandon "any property of the estate that is burdensome ... or that is of inconsequential value." Section 554(a) allows the trustee to move to abandon an asset, while Sec. 554(b) permits any "party in interest" to request the court to abandon property. The requirements of notice, a hearing and court approval "assure[ ] that the creditors ... are given an opportunity to object to the return of any property to the bankrupt." Bryson v. Bank of New York, 584 F.Supp. 1306, 1316 (S.D.N.Y.1984) (holding that submitting a trustee's affidavit to the court is insufficient notice of intent to abandon an asset).
 
 
 26
 The provision most applicable to this case is Sec. 554(b), which empowers a bankruptcy court to order the trustee to abandon the property upon a party's formal motion before the bankruptcy court--estate property cannot simply be abandoned without judicial involvement. In re Lansberry, 177 B.R. 49, 56-57 (Bankr.W.D.Pa.1995). Where the debtor brings suit on a claim that has neither been administered nor abandoned by the trustee, the court may exercise its power under Fed.R.Civ.P. 25(c) to join or substitute the trustee as a party plaintiff in order to avoid dismissing the debtor's suit. In In re James, 120 B.R. 802 (Bankr.E.D.Pa.1990), rev'd on other grounds, 940 F.2d 46 (1991), for example, the bankruptcy court ordered joinder of the trustee as the party plaintiff in a suit filed by the debtor to vacate a judgment obtained in violation of the automatic stay required by 11 U.S.C. Sec. 362 and seeking a turnover of funds. The court justified its decision as preserving "a legitimate claim [that] is hindered only by a minor jurisdictional defect," stating:
 
 
 27
 This court is unwilling to allow a trustee effectively to abandon a legitimate claim without officially abandoning it, which [under Sec. 554(b) ] cannot be done without court approval. If the Trustee here did officially abandon his cause of action, it would revert to and become a property interest of the Debtor, who could then pursue an action on her own. In re Bennett, 13 B.R. 643 (Bankr.W.D.Mich.1981). A trustee is not endowed with complete discretion. The court is empowered to effect justice concerning the disposition of an estate's property interests.
 
 
 28
 James, 120 B.R. at 808. The James court noted that in Bauer v. Commerce Union Bank, another panel of this court affirmed a district court's decision to do the same thing. 859 F.2d 438, 441-42 (6th Cir.1988), cert. denied, 489 U.S. 1079 (1989). We find that this reasoning is consistent with our policy in Rosinski of allowing a debtor to amend a bankruptcy schedule in the absence of prejudice, and also comports with the flexible approach employed in Bauer; other courts have applied a similar rule. See Cain v. Hyatt, 101 B.R. 440 (Bankr.E.D.Pa.1989); Nagle v. Commercial Credit Business Loans, Inc. 102 F.R.D. 27 (E.D.Pa.1983).
 
 
 29
 Further, all of the Bittels' creditors received notice of their intention to amend, and not one objected. This demonstrates a lack of prejudice to the creditors, as well as substantial compliance with the notice and hearing concerns in Sec. 554. By holding that the district court abused its discretion in denying the Bittels' motion to amend, we need not decide specifically whether the trustee abandoned the Bittels' lawsuit under Sec. 554(b), or whether the trustee must be joined as a party to the suit pursuant to Fed.R.Civ.P. 25. If the schedule is amended, the Bittels will have standing, with or without the trustee. We remand to the district court with instructions to consider allowing amendment under Rosinski and Soult and for further proceedings consistent with this decision.
 
 V
 
 30
 Because we find that the district court abused its discretion in refusing to allow the Bittels to amend their asset schedules to include the wrongful discharge claim against Yamato, we reverse and remand the case with instructions. The district court should allow the amendment unless it affirmatively finds that the original failure to list the lawsuit as an asset was part of a scheme of fraud or was done wilfully or recklessly, to the prejudice of creditors.
 
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Although Yamato states that the bankruptcy court found that the Bittels displayed "bad faith," and as a result, Yamato was "prejudiced," Resp.Br. at 25, these conclusions do not appear in the court's order denying relief. Statements made at a hearing are not binding factual or legal conclusions unless a court chooses to include them in its opinion or order
 
 
 [2]
 Sec. 350. Closing and reopening cases
 (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
 (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.
 
 
 [3]
 "Intentional" as used in that context appears to refers to acting with specific intent to accomplish a certain result, such as to prejudice a creditor, rather than the more general state of mind demonstrating a person "conscious of doing the act."
 
 
 [4]
 Some courts have criticized this rule. See, e.g., Milando v. Peronne, 157 F.2d 1002 (2d Cir.1946); In re Laczko, 37 B.R. 676 (Bankr. 9th Cir.1984), aff'd, 772 F.2d 912 (9th Cir.1985); see also Peacock v. State Farm Mut. Auto. Ins. Co., 139 B.R. 421 (Bankr.E.D.Mich.1992) (criticizing Stark and its progeny as decided upon flawed and unnecessary assumptions)
 
 
 [5]
 In In re Nelson, 100 B.R. 905, 907 (Bankr.N.D.Ohio 1989), the court refused to reopen a bankruptcy case to allow the debtors to sue a bank because "no clear benefit is shown to creditors." However, the lawsuit was patently frivolous, arising from conduct occurring decades ago, and it had already been litigated. Ibid
 
 
 [6]
 Yamato argues that because the Bittels erred in not including the lawsuit as an asset, the court can essentially punish them for their oversight or neglect by not allowing amendment. Even if the Bittels were negligent, bankruptcy law, perhaps more than any other legal field, recognizes that people will make mistakes and need not be penalized for every error